May it please the Court, Eric Levin for Petitioner Appellate Joseph Cornett. There's no dispute that the trial court's failure to give the Carter instruction violated Mr. Cornett's Fifth Amendment rights. This Court should grant the writ because the trial court's error had a substantial and injurious effect on Mr. Cornett's trial. The case against Mr. Cornett was entirely circumstantial. No single witness took the stand and identified Mr. Cornett as the shooter. The forensic evidence, gunpowder residue, was equivocal. The state's witness testified that mere proximity to a gun being fired would leave residue and, in fact, he wouldn't be surprised if others in the car had it on them. And that evidence was never presented at trial, the results of the gunpowder residue of the other occupants in the car. The victim testified he didn't know which of the five individuals within that car shot him. The case, the prosecution case, relied on testimony from some of the victim's friends. Two of them, Shelby Green and Paul Smith, identified, testified that they saw the driver of the car shoot the gun. And a third friend, Dion Glasper, testified that he saw the driver with a gun, but did not witness the shooting. But there's ample reason to question their testimony. None of the witnesses identified Mr. Cornett. Isn't that all the role of the jury? Whether these are credible witnesses and what they want them to do, size them up, bring them forward? Absolutely. Right. Absolutely it's the role of the jury, but the jury also needs to, Carter teaches,  we know from Carter and we know from Lakeside v. Oregon that the natural impulse of the, of a juror would be to hold invocation of the fifth amendment privilege as an admission of guilt. So on direct appeal, the state court of appeals said, Well, the district court below and on direct appeal didn't consider what I consider to be a rather important fact, which is the burden-shifting argument that the State employed in summation. The State told the jury that the defendant can call witnesses to, and that that's something that you should consider, you can consider, the failure to call logical witnesses. So my point is, we have a circumstantial case where the forensic evidence is equivocal. We have eyewitness testimony that conflicts in critical ways, and it conflicts with the testimony from police officers who later stopped the car. And in light of that, and in light of the natural inclination of a juror to hold against the defendant's silence, and in light of the prosecution's suggestion that the failure to call logical witnesses can be considered, that, to me, results in substantial injurious effect. This is something that on direct appeal the court did not consider, and nor did the court give any weight to summation in the district court below. And it's not as though this is a case in which, despite the Carter error and despite the burden-shifting argument, there was a clear evidence of guilt. As I mentioned, there was substantial material conflicts between those particular witnesses. In particular, on the night of the shooting, despite the fact that the victim's testimony was questioned by the police, none of them gave a statement to the police, either describing the shooter or indicating, as they did at trial seven months later, that it was a driver of the car. No. What I'm saying is the individuals on the street, there were two groups, the individuals on the street or with the man who got shot, none of them talked to the police. Certainly there could have been a lot of reasons, but we know that they gave no statement then. Seven months later, they come in with some testimony that is then presented to the jury. But in the interim, during that seven months, one of those witnesses, Shelby Green, testifies that he forgot about what had happened. And another witness, Dion Glasper, testifies that he and his friends got together to kind of get their story straight about what happened. The description that they give during the trial is vague. It describes multiple individuals in the car. Some of them say, two of them indicate that they saw the driver wearing a hat. When the police pull over the car a few minutes later, it's the front passenger who's wearing the hat. Two of them say that Paul Smith and Shelby Green testified that the gun is fired out the passenger side window. And yet a third witness says, well, the front passenger window was closed. These things are important because that was the basis of the case. And so when you have the number of witnesses, it doesn't make up for the lack of quality and the lack of consistency. In addition, the state also relied on a recanted statement of an individual within the car, the only person within that car to testify. He testified at trial that he didn't know who fired the gun, that his head was down at the time. And this was consistent with what he told the police on the night of the incident. But later he said that Mr. Cornett had fired the shot. But there was reason to doubt that recanted statement. It was the product of a 10-hour detention. I gather all of that was argued before the jury. That's correct. The jury heard all of this. But what the jury also heard is we didn't hear from these other individuals in the car. That's something that you can consider. If they're friends, why aren't they there? Consider a failure to call logical witnesses. He can call witnesses, too. And what they didn't hear is that you can't hold against him his failure to testify. And so those things together with the whole reason for the Carter rule, the whole reason for it is because of a concern that the state shouldered all the burden in a criminal trial and the recognition that the natural impulse of the lay wit juror is to hold silence as equivalent to a confession. There was no – there was an instruction, I think, in the state to say it doesn't have to prove the sentence. It doesn't have to call witnesses. There was an instruction, CalJIT 2.11, which said that neither party needs to call all witnesses. That's true. But I think – It's required to call a witness. It's not a personal opinion. It's a personal opinion. And it may appear to be some knowledge that he or she is required to do this. I don't know why that's the case. But critically, there's no statement that the defendant has to call the witness. That's the instruction that should have been given or should have been worked into. So nowhere in the course of the fair trial and jury practice does it have a confidentiality. Right. And that's why the error is a distinction. Right. So your argument is that it's basically the practice of the medical court that has Absolutely. That's correct. In light of the equivocal forensic evidence, conflicting circumstantial evidence, the summation of the state and the failure to give the instruction. And just the nature of the incident. The question was, who within that court did this? Those are the logical witnesses if the jury isn't instructed, May it please the Court. Some of the testimony may have been circumstantial evidence, but circumstantial evidence can be damning. And we also have direct evidence in this case, which I have yet to hear any mention  There was gunshot residue only on the hands of Petitioner, the driver of the car. Did they test the other car? Everyone was tested. And, you know, the gun had moved around the car. It was obviously stuffed under the seat by one of the Confederates. But the I believe that's correct. Yes. They presented the evidence of the gunshot residue on his hands. I believe that's correct. I don't think they disproved the question that has been asked. From the jury standpoint. Right. Substantial gunshot residue. The importance of the gunshot residue was explained to the jury that this was consistent with firing the weapon. I guess we've already agreed that I should not have made that statement. There is no evidence before the jury that anyone else in the car was free of gunshot residue. There is evidence that others were tested from the police officer. Yes. If I'm a juror and I hear that he has gunshot residue, is it possible that anybody in the car who was exposed to gunshot residue could also wind up having gunshot residue, even if they had a car? Was that an argument? Not precisely. I believe what the jury knew was that both front seat persons, because the police officer explains that so-and-so was tested first and then petitioner. So the jury knew that others, or at least one other, was tested, and that gunshot residue was found consistent with firing the weapon on the hands of the driver. Yes. Was there evidence that someone else had gunshot residue? Right. I don't believe there was any other gunshot residue evidence presented other than that it was on the hands of the accused. The question I would ask is whether the jury had any information. Right. I believe it was just that he had, and I believe it was that hands were tested. So I don't really have a question about whether shirts were tested. Was there any other direct evidence other than gunshot residue? There was eyewitness evidence, and the basic syllogism was that the driver fired the gun, the petitioner was the driver, and there was gunshot residue on the driver. I believe that leads to a logical conclusion. Now, who actually testified that he wasn't the driver? That came as basically cross-examination, taking the witness in the car who recanted back to his statement to police. He's the only one that testified that the driver wasn't the driver, that Mr. Quinnett was the driver. He was also the driver when the police stopped him, and there was also evidence that he shot over, that the passengers reclined both in the front seat and in the back seat, and that he shot over through. And there was also additional forensic evidence that where the ejected cartridge was found was consistent with a gun fired through, sort of over the passenger and through the front seat. How do you respond to these types of arguments, and the closing argument about that, that it could have caused these other differences? Correct. Also suggesting that it's not. I don't think it suggests that, Your Honor. If the error were that an instruction, which actually was given here, had not been given, the one that no party is required to call all witnesses, we would have perhaps a different problem given that argument. But there was never a suggestion that, you know, there's no Doyle error here. There was never a suggestion that the defendant himself should have testified. The implication and the argument was if any of his colleagues had useful information to provide that, you know, they could be called. But there was never any suggestion that the defendant should have been called. And that's really the basis, the fact that the error you're suggesting isn't the error that occurred here. The instruction given. Right. And that argument is in the context that no party is required to call all witnesses in the instruction that was given. I freely conceded that there was error. The reason I didn't concede any prejudice is because there was never an implication of even a suggestion that the defendant himself had information that should have been provided, that he was in any way obliged to testify. You know. But to have a grip and sort of an error, you have to have some sort of a suggestion that he has a duty to do that. There was no suggestion along those lines. And basically all the other instructions, that it's the people's burden, that you have to have proof beyond a reasonable doubt, and that no party is required to call all witnesses. All of those really address the same underlying issue that is addressed by the instruction that unfortunately was not given. That's why, in part, it's subject to harmless error. I want to note that counsel is facing his harmless error argument in this court on the Brecht case. We agree that the Brecht case is the appropriate standard on collateral attack. I know that there is the Ayala case currently pending before the United States Supreme Court. However, and I want to acknowledge the elephant in the room, that that issue is before the U.S. Supreme Court, whether Brecht or Chapman is the right standard to apply in this court. Well, right now we have Brecht. Right now we have Brecht, and Brecht helps the people. I thought there was an earlier Supreme Court case that Brecht subpoenaed Chapman. Brecht. Absolutely. We've always credited Brecht. That is correct. Brecht requires more evidence. Absolutely. Absolutely. And I just wanted to acknowledge that Ayala is out there and pending and being briefed as we speak. Let me see if I can get someone to brief me on what you're relying on. Sure. Yes. But then also came back in and laid back, yes. And then there was the President. What am I missing? Moments later, he's still the driver. Moments later, when the police stopped, he didn't stop the car. And that there is testimony from the rear driver's side passenger, which when you add his recanting and the impeachment with his prior statement, right, establishes it. I understand that. I'm talking about the fiscal evidence. Correct. Because the bullet itself was never recovered. So we cannot connect the bullet to the gun. But somebody sees the point. Okay. Any further questions? Thank you. Thank you. We'll hear from you guys. We've got a few seconds. We'll give you a minute over that. I think I can get it done. Should I ask one question? Yes. I thought in your opening brief that you were going to ask that question. Yeah, let me clarify that. The testimony is an excerpt of Record 281. This is the criminalist testifying. And they said we had five kits. So, you know, just to be clear, they collected five samples. But the testimony was they only tested one of those. So we had four other kits that were not tested. And that's an excerpt of Record 281. And the reason was we have a backlog in the lab, and you wanted me to test the individual who you believe was the shooter, was the testimony of the criminalist. The criminalist then said that the presence of gunshot residue, it's also possible, quote, it's also possible to be in very close proximity to a gun and get residue on you. It's possible to pick up a gun that's been fired and get residue. Those are all possibilities. That's a 284 excerpt of Record 281. The other reason they didn't test the additional kits was because I wasn't going to give you a clear answer as to who shot a gun was what the criminalist said. The shell casings found in the back seat, the gun is under, in the back seat under the passenger side seat. So none of that adds a whole lot to the mix, in my opinion. The point I just want to emphasize in the time I have left is that the syllogism that the state talks about, I don't think it's quite as clear. What we do know is that this was in the wee hours of the morning, that individuals had been drinking, that the inside of the car was cast with shadows, and that it took moments. This whole thing occurred within moments, and the parties were unknown to each other. So in light of that, the inconsistencies about whether the front passenger window was open or closed, with whom the initial contact was with, was it the back passenger or the front passenger, the vague descriptions, the fact that some say he has a hat and then they find no hat, those kinds of things are critical because that's about the weight of the evidence. Thanks. Okay. Thank you, Counsel. We appreciate your arguments. The matter is submitted.
judges: Quist, Fisher, Paez